UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------x
EQUAN BROWN, on behalf of himself
and all others similarly situated,

                                                      Index No.: 18-CV-8038

                            Plaintiff,


                     -against-

DR SMOOD 1151 BROADWAY LLC, DR SMOOD
285 MADISON LLC, DR SMOOD 485 LEX LLC,
DR SMOOD SOHO LLC, DR SMOOD ORCHARD LLC,
DR SMOOD NEW YORK PRODUCTION LLC,
RENE SINDLEV, individually, and PATRIZIA
MANICI SINDLEV, individually,

                           Defendants.
---------------------------------------------------------------------------x

### JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release, including all exhibits hereto (collectively, this "Agreement"), is entered into by and between Equan Brown ("Brown" or "Named Plaintiff"), individually and on behalf of the classes of individuals that he seeks to represent, and Dr Smood 1151 Broadway LLC, Dr Smood 285 Madison LLC, Dr Smood 485 Lex LLC, Dr Smood Soho LLC, Dr Smood Orchard LLC, Dr Smood New York Production LLC, Rene Sindlev, and Patrizia Manici Sindlev ("Smood" or "Defendant").

### RECITALS

WHEREAS, on June 1, 2018, Plaintiff Equan Brown filed a class action lawsuit in the Supreme Court of the State of New York, County of New York, Index No. 155416-2018, in which he claimed that Defendant owed him and other allegedly similarly situated wages and damages for notice violations under the New York Labor Law;

WHEREAS, on September 4, 2018, this case was removed from the Supreme Court of New York State to the United States District Court, Southern District of New York (the "Litigation");

WHEREAS, this Agreement is intended to effectuate the full, final, and complete resolution of all allegations and claims that were asserted, or could have been asserted, in the Litigation, including any appeals, by Named Plaintiff and the class members that he seeks to represent;

WHEREAS, Defendant denies all of the material allegations in the Litigation, and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation;

WHEREAS, without admitting or conceding any liability or damages whatsoever, Defendant agrees to settle the Litigation on the terms and conditions set forth in this Agreement, solely to avoid the burden and expense of continuing the Litigation;

WHEREAS, Plaintiff's Counsel (as defined herein) evaluated the merits of the claims made against Defendant in the Litigation, which included conducting interviews with putative class members, obtaining and reviewing documents relating to Defendant's policies and procedures, and analyzing records and data produced in discovery during the Litigation, and concluded that there exists a risk that, if not settled now, the Litigation might not result in any recovery or might result in a recovery on terms less favorable than those set forth herein, that any such recovery may not occur for several years, and that no class or collective claims would be certified or they may be decertified; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1.    **DEFINITIONS**
The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1    **"Class Counsel"** or **"Plaintiff's Counsel"** means the law firm Bouklas Gaylord LLP. For purposes of providing notice under this Agreement, Class Counsel shall refer to James Bouklas, Esq. and Mark Gaylord, Esq.

1.2    **"Class Members"** means, collectively, the Rule 23 Class Members.

1.3    **"Court"** means the United States District Court for the Southern District of New York.

1.4    **"Days"** means calendar days.

1.5    **"Defendant's Counsel"** means the law firm Holland & Knight LLP. For purposes of providing notice under this Agreement, "Defendant's Counsel" means Loren Forrest, Esq.

1.6    **"Effective Date"** means the date that all of the following have occurred: (A) the Court has entered the Final Approval Order in the form attached as Exhibit A and the Final Judgment in the form attached as Exhibit E, and ruled on the motions for awards of service payments, and for attorneys' fees and reasonable costs, and (B) the judgment and the rulings on such motions have become Final.

1.7    **"Final"** means the later of:

(1) The governing time periods for seeking rehearing, reconsideration, appellate review and/or an extension of time for seeking appellate review have expired and there have been no such actions; or

(2) If rehearing, reconsideration, appellate review, and/or an extension of time for seeking appellate review is sought, thirty (30) Days after any and all avenues of rehearing, reconsideration, appellate review and/or extension of time have been exhausted and no further rehearing, reconsideration, appellate review, and/or extension of time is permitted, and the time for seeking such things has expired, and the judgment has not been modified, amended, or reversed in any way.

1.8    **"Fairness Hearing"** means the hearing before the Court relating to the Motion for Judgment and Final Approval.

1.9    **"Final Approval Order"** means the Order entered by the Court after the Fairness Hearing, in the form attached as Exhibit A, approving the terms and conditions of this Agreement.

1.10   **"Final Judgment"** means the judgment entered by the Court after the Fairness Hearing in the form attached as Exhibit E dismissing the Litigation with prejudice

in accordance with this Agreement and the Final Approval Order.

1.11 **"Gross Settlement Amount"** means an aggregate amount not to exceed $261,458.84, which Defendant has agreed to pay to settle the Litigation as set forth in this Agreement, subject to Defendant's right to terminate this Agreement.

1.12 **"Tipped Employee"** means any employee to whom tips were owed during their employment with Defendants.

1.13 **"Last Known Addresses"** means the most recently recorded physical mailing address and electronic mail address for a Class Member as such information is contained in Defendant's Records.

1.14 **"Net Settlement Amount"** means the Gross Settlement Amount minus deductions for court-approved attorneys' fees and costs/expenses, court-approved service payments, and reasonable costs of settlement administration.

1.15 **"Notice"** means the respective Court-approved notice regarding the settlement in the forms attached as Exhibits B.

1.16 **"Objector"** means a Rule 23 Class Member who timely and correctly files an objection to this Agreement, and does not include any individual who opts out of this Agreement.

1.17 **"Opt-Out Statement"** means a statement, in the forms attached as Exhibit C, indicating that an individual Rule 23 Class Member is seeking exclusion from a Rule 23 Class, is opting out, and is electing to not be included in this Agreement or the settlement.

1.18 **"Participating Claimant(s)"** all Rule 23 Class Members who do not opt out of the settlement.

1.19 **"Parties"** means Brown, individually and on behalf of the classes of individuals that he seeks to represent, and Defendants Dr Smood 1151 Broadway LLC, Dr Smood 285 Madison LLC, Dr Smood 485 Lex LLC, Dr Smood Soho LLC, Dr Smood Orchard LLC, Dr Smood New York Production LLC, Rene Sindlev, and Patrizia Manici Sindlev.

1.20   **"Postmark"** means the date stamped or otherwise indicated on an envelope by the United States Postal Service or other mail carrier. For any deadline under this Agreement that is based on a Postmark, in the event that there is no postmark date of the document being mailed by the Class Member, it shall be presumed the document was mailed three (3) Days prior to the date received by the Defendant, excluding any Sunday or other day for which no postal service was provided.

1.21   **"Preliminary Approval Order"** means the Order entered by the Court, in the form attached as Exhibit D, preliminarily approving the terms and conditions of this Agreement, conditionally certifying the class for settlement purposes pursuant to FRCP 23, and directing the manner and timing of providing Notice to Class Members.

1.22   **"Qualified Settlement Fund"** or **"QSF"** means the fund or account established by Defendants containing the Gross Settlement Amount from which distributions will be made in accordance with this Agreement.

1.23   **"Released Federal Law Claims"** means any and all federal law claims, obligations, demands, actions, rights, causes of action, and liabilities against Releasees of whatever kind and nature, character and description, whether known or unknown, asserted or unasserted, and whether anticipated or unanticipated, that are based upon or arise out of the facts, acts, transactions, occurrences, events, or omissions alleged in the Litigation and that occur, occurred, accrue or accrued on any date up through the date of the Preliminary Approval Order, including, without limitation: (i) claims for any type of relief under the FLSA, including, without limitation, claims for minimum wages, overtime, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, or under any other legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, or to recover interest, liquidated damages, and/or penalties thereon; (ii) claims for any type of relief under the Employment Retirement Income Security Act of 1974, as amended ("ERISA"), including, without limitation, claims for vested and unvested employee benefits; (iii) claims arising out of or related to any contract, policy, practice, or employee handbook of Defendant concerning wages and hours and employee benefits; and (iv) and any claims related to, derivative of, or based upon the claims in (i)-(iii) above, including for unpaid costs, penalties (including late payment penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs,

restitution, or equitable relief.

1.24   **"Released State Law Claims"** means collectively any and all New York State and local law claims, obligations, demands, actions, rights, causes of action and liabilities against Releasees, of whatever kind and nature, character and description, whether known or unknown, asserted or unasserted, and whether anticipated or unanticipated, that are based upon or arise out of the facts, acts, transactions, occurrences, events, or omissions alleged in the Litigation and that occur, occurred, accrue or accrued on any date up through the date of the Preliminary Approval Order, including, without limitation: (i) claims under the New York Labor Law, and its regulations and rules, or under any other legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide and/or to pay for meal and/or rest periods, failure to timely pay final wages, failure to pay "spread of hours," failure to reimburse for business expenses, and/or failure to furnish accurate wage statements or other notices, any and all claims alleging unlawful imposition, deduction, or chargeback from compensation for expenses or costs under applicable state laws, any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties; (ii) claims for employee benefits, including, without limitation, payments for accrued but unused vacation and paid sick leave, and (iii) claims arising out of or related to any contract, policy, practice, or employee handbook of Defendant concerning wages and hours and employee benefits; and (iv) and any claims related to, derivative of, or based upon the claims in (i)-(iii) above, including for unpaid costs, penalties (including late payment penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief. The New York state law claims which are released include, without limitation: claims under N.Y. Lab. Law § 160 et seq.; N.Y. Lab. Law § 190 et seq. (including, but not limited to, §§ 191, 193, and 198); N.Y. Lab. Law §§ 215 and 218; New York Minimum Wage and Hour Law: NY. Lab. Law § 650 et seq.; and 12 N.Y. Comp. Codes R. & Regs. Pt. 142-2.1 et seq. (including, but not limited to, §§142-2.2, 142-2.4, and 142.-2.14).

1.25   **"Releasees"** means Defendants Dr Smood 1151 Broadway LLC, Dr Smood 285 Madison LLC, Dr Smood 485 Lex LLC, Dr Smood Soho LLC, Dr Smood Orchard LLC, Dr Smood New York Production LLC, Rene Sindlev, and Patrizia Manici Sindlev, their stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies,

divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Litigation.

1.26 **"Rule 23 Class Members"** means, collectively, the following: all current and former employees who worked for Defendants in the State of New York from May of 2017 through November 2017 who were employees who earned tips but whose received tips did not include the full measure of tips processed by credit card.

1.27 **"Settlement Checks"** means checks issued to Participating Claimants for their share of the Net Settlement Amount.

1.28 **"Updated Address"** means a mailing address that was updated via a skip trace or an updated mailing address or email address provided in writing by the United States Postal Service for a Class Member.

2. **NON-ADMISSION OF LIABILITY**. Nothing relating to this Agreement, or any communications, papers, or orders related to the settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by Defendant or Releasees of any liability, culpability, negligence, or wrongdoing toward the Named Plaintiff, the Class Members, or any other person, and Defendant and Releasees specifically disclaim any liability, culpability, negligence, or wrongdoing toward the Named Plaintiff, the Class Members, or any other person, or that class or collective action certification is appropriate in this or any other matter except for settlement purposes. Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies. This Agreement, and any communications, papers, or orders related to the settlement entered into pursuant to this Agreement, may not be cited to, used, or admitted as evidence of liability or that class or collective action certification is appropriate. There has been no determination by any court as to the merits of the claims asserted by Named Plaintiff against Defendant or as to whether a class should be certified or an FLSA collective finally certified, other than for settlement purposes only. The Parties understand and agree that this Agreement and all exhibits hereto are settlement documents and shall be inadmissible in evidence in any proceeding, except an action or proceeding (including appeals) to approve, interpret, or enforce the

terms of this Agreement.

**3.      SETTLEMENT CLAIMS ADMINISTRATION**

3.1      (A) The Parties shall designate a third party Claims Administrator that will be
responsible for mailing Notice Class Members; Defendants shall be responsible
for establishing and administering the QSF; distributing settlement payments;
calculating and withholding Class Members' share of applicable payroll taxes
(including, without limitation, federal, state, and local income tax withholding and
the employee portion of FICA, Medicare and any applicable state or local
employment taxes) ("Income Withholding and Employee Portion Payroll Taxes");
remitting such withheld Income Withholding and Employee Portion Payroll
Taxes to the appropriate Taxing Authorities and fulfilling all tax reporting
requirements with respect thereto; calculating the employer share of applicable
payroll taxes (including, without limitation, FUTA, SUTA and the employer
portion of FICA, Medicare and any applicable state or local employment taxes)
("Employer Portion Payroll Taxes"); remitting such Employer Portion Payroll
Taxes to the appropriate Taxing Authorities and fulfilling all tax reporting
requirements thereto; preparing and filing all tax returns necessary for the
settlement and the QSF; and preparing one or more declarations regarding the
claims administration process.

(B) The Claims Administrator shall mail and email Notice to Class Members in
accordance with Section 4.2.

(C) The Claims Administrator shall provide weekly reports to Defendants and
Plaintiff providing: (1) the status of the mailing of the Notice to Class Members;
(2) the names of Class Members who submit Claim Forms, Opt-Out Statements,
or objections; and (3) and the status of the claims administration process,
distribution of the Settlement Checks, tax withholding and reporting, and other
matters relating to the settlement.

(D) The Claims Administrator shall take reasonable steps to obtain the Updated
Address of any Class Members for whom a Notice is returned by the Post Office
as undeliverable and shall attempt re-mailings as described in Sections 4.2(D) and
(E) of this Agreement. The Claims Administrator shall notify Defendants and
Plaintiff  of any Notice sent to a Class Member that is returned as undeliverable

after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

(E) The Claims Administrator shall keep accurate records of the dates on which it sends Notice to Class Members.

(F) Defendants shall promptly provide a current IRS Form W-9 of the QSF so as not to delay the deposit of the Gross Settlement Amount into the QSF, as set forth more fully in Section 8.1(B).

(G) The Claims Administrator shall keep accurate records of all Opt-Out Statements and provide copies of the same to Class Counsel in accordance with Section 5.1.

(H) The Claims Administrator shall keep accurate records of all objections and provide copies of the same to Defendants and Plaintiff in accordance with Section 5.2.

(I) Defendants shall calculate and handle tax withholding, payment and reporting in accordance with Section 8.6 and, in furtherance of this responsibility, may request, as necessary, tax forms or other information from Class Members (such as applicable state tax forms).

(J) Defendants shall notify Class Counsel of any Non-Wage Portion of any settlement payment that it determines is subject to backup withholding or other applicable tax withholding pursuant to Section 8.6(B)(2).

## 4.    PRELIMINARY APPROVAL AND CLASS NOTICE

4.1    Preliminary Approval Motion.

(A) The Parties will submit this Agreement to the Court and will jointly file a Motion for an Order Preliminarily Approving the Class and Collective Action Settlement (the "Preliminary Approval Motion"). In connection with the Preliminary Approval Motion, the Parties shall also submit the proposed Preliminary Approval Order attached hereto as Exhibit D.

(B) In the Preliminary Approval Motion, among other things, (i) the Parties shall

seek preliminary approval of this Agreement, including settlement of the claims of the class, and preliminary approval of the form of releases that are part of the settlement of the Litigation, and (ii) Plaintiff shall seek (and Defendant will not oppose), for settlement purposes only, provisional certification of the Class under FRCP 23.

(C) Additionally, in the Preliminary Approval Motion, and consistent with this Agreement, the Parties shall move the Court to set deadlines for Rule 23 Class Members to submit Opt-Out Statements and objections to this Agreement. The Preliminary Approval Motion shall also ask the Court to schedule a Fairness Hearing for final approval of the settlement no earlier than one hundred and sixty (160) days after the Court's entry of a Preliminary Approval Order.

4.2 Notice to Class Members.

(A) Within thirty (30) Days after the Court's entry of a Preliminary Approval Order, Defendant shall compile and transmit the Last Known Addresses and most recent withholding information for all Class Members to Class Counsel, in electronic form, to the extent such information is maintained in Defendant's Records ("Class List").

(B) Within thirty  (30) Days after the Court's entry of the Preliminary Approval Order, the Defendant shall prepare final versions of the following documents, incorporating into each document the relevant dates set forth in the Court's order: (1) a Notice Of Proposed Settlement Of Class Action Lawsuit And Fairness Hearing, in the form attached as Exhibit B, and (2) an Opt-Out Statement in the form attached as Exhibit C,;

(C) Within forty-five (45) Days of the Preliminary Approval Order, the Claims Administrator shall mail, via United States First Class Mail, postage prepaid, and electronic mail, the final versions of the documents referred to in Sections 4.2(B)(1)-(2).

(D) In the event that, subsequent to the first mailing of Notice, a Class Member's Notice is returned to the Claims Administrator by the United States Postal Service with an Updated Address, the Claims Administrator shall re-mail the Notice and the applicable accompanying documents to that address within seven (7) Days.

(E) In the event that, subsequent to the first mailing of Notice, a Class Member's Notice is returned to the Claims Administrator by the United States Postal Service with no forwarding address, the Claims Administrator shall undertake to locate an Updated Address within seven (7) days. If such address is ascertained, Defendant shall re-send the Notice and the applicable accompanying documents within seven (7) Days after receiving the information.

## 5.     CLASS MEMBER RESPONSES TO NOTICE

### 5.1     Rule 23 Class Member Opt-Outs

(A) Any Rule 23 Class Member may request exclusion by "opting out." To do so, a Rule 23 Class Member must submit a written and signed request for exclusion to Class Counsel, in the form of the Opt-Out Statement attached as Exhibit C.

(B) To be effective, an Opt-Out Statement must be postmarked, faxed or emailed within sixty (60) Days from the mailing of the Notice to the Class Member ("Opt-Out Period"). It is the responsibility of the individual seeking to opt out to retain a copy of the Opt-Out Statement and proof of timely mailing, emailing or faxing.

(C) The Claims Administrator shall stamp the receipt date on the original of each Opt-Out Statement that it receives and shall serve copies of each Opt-Out Statement on Class Counsel not later than three (3) Days after receipt thereof. Class Counsel shall promptly file with the Clerk of Court stamped copies of any Opt-Out Statements. Defendant will, within twenty-four (24) hours of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel by email. Defendant's Counsel shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files for a period of seven (7) years.

(D) Any Rule 23 Class Member who does not properly and timely submit an Opt-Out Statement pursuant to this Agreement shall be bound by the Final Judgment, and shall have released the Released State Law Claims and Released Federal Claims set forth in this Agreement.

(E) The Named Plaintiff shall not opt out of the settlement and the Named Plaintiff's and the Plaintiff's execution of this Agreement shall signify his

agreement to all of the terms of the settlement.

5.2     **Rule 23 Class Member Objections to Settlement**

(A) Any Rule 23 Class Member who does not submit an Opt-Out Statement and who wishes to become an Objector (i.e., object to the proposed settlement) must do so in writing. To be considered, a written objection must be postmarked, faxed or emailed within thirty-five (35) Days from the mailing of the Notice to the Class Member. The written objection must include words to the effect of, "I object to the settlement in the Dr. Smood tip case," as well as all reasons for the objection. Any reasons not included in the written objection shall not be considered by the Court at the Fairness Hearing or otherwise. The written objection must also include the name, address, and telephone number for the Objector. The Claims Administrator shall stamp the date received on the original and send copies of each objection to Defendants and Plaintiff by email, and shall send Class Counsel the date-stamped original of each objection by overnight delivery, no later than three (3) Days after receipt thereof. Class Counsel shall promptly file the date-stamped originals of any and all objections with the Court. It is the responsibility of any Objector to retain a copy of the objection and proof of timely mailing hereunder.

(B) A valid Objector also has the right to appear at the Fairness Hearing either in person or through counsel retained by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing at the time he or she submits his or her written objections by including words to the effect of, "I intend to appear at the Fairness Hearing" in his or her written objection. An Objector may withdraw his or her objections only with the Court's approval. A Rule 23 Class Member who has submitted an Opt-Out Statement may not submit objections to the settlement, and any such objections shall not be filed with or considered by the Court.

(C) The Parties may file with the Court written responses to any filed objections no later than seven (7) Days before the Fairness Hearing.

6.      **FAIRNESS HEARING AND FINAL JUDGMENT**

6.1     Motion for Judgment and Final Approval. No later than seven (7) Days before the Fairness Hearing, the Parties shall jointly file with the Court a Motion for

Judgment and Final Approval. At the Fairness Hearing, and in their Motion for Judgment and Final Approval, the Parties shall request that the Court enter judgment in accordance with this Agreement in the form attached as Exhibit E, and enter an order, in the form of Exhibit A, (a) approving the settlement and this Agreement as final, fair, reasonable, adequate, and binding on all Participating Claimants who have not timely opted out pursuant to Section (b) dismissing the Litigation with prejudice, subject to the Court's retention of jurisdiction to oversee enforcement of this Agreement, and (c) permanently enjoining Named Plaintiff and all Participating Claimants from pursuing and/or seeking to reopen claims that have been released by this Agreement. Further, at the Fairness Hearing and in the Motion for Judgment and Final Approval, Named Plaintiff shall seek (and Defendant will not oppose) final certification, for purposes of settlement, of the Rule 23 Class. In addition, at the Fairness Hearing, Class Counsel will seek an award of attorneys' fees and costs and Named Plaintiff will seek an award of service payments.

**7.      TERMINATION AND ITS EFFECTS**

7.1      **Defendant's Right to Terminate Based On Excessive Opt-Outs**. Defendant shall have the absolute discretionary right to terminate this Agreement at any time prior to the entry of the Final Approval Order in the event that twenty (20) or more Rule 23 Class Members timely submit Opt-Out Statements.

7.2  **Effect of Termination or Failure to Obtain Preliminary or Final Approval**. In the event that this Agreement is not approved in its entirety by the Court; or in the event that this Agreement is terminated, cancelled, declared void, or fails to become effective in accordance with its terms; or if the Final Judgment does not Final; or if the Effective Date does not occur, the Parties shall proceed as follows:

(A) Defendant shall have no obligation to make any payments provided for by this Agreement.

(B) This Agreement (other than the non-admission provisions in Section 2, and this Section 7.2,) shall be deemed null and void, and their terms and provisions shall have no further force or effect.

(C) Neither this Agreement, nor any other related papers or orders, nor the negotiations leading to the Agreement shall be cited to, used, or deemed

admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural.

(D) The Litigation shall proceed without prejudice as if this Agreement had not been executed, unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Final Judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

(E) The Parties shall not be deemed to have waived any claims, objections, defenses, or arguments with respect to the issue of class or collective action certification or the merits of Named Plaintiff's claims in the Litigation or any other issue, but rather shall retain the right to assert or dispute all claims and allegations, to assert or dispute all applicable defenses, and to assert or dispute the propriety of class/collective action certification or decertification on all applicable grounds.

(F) Any judgment or order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

(G) None of the information provided by Defendant to Class Counsel for purposes of settlement negotiations only or obtained by Class Counsel about Class Members as a result of the settlement approval process shall be used by Class Counsel in the Litigation, unless the information is obtained later through the litigation process.

(I) Notwithstanding any other provision of this Agreement, a modification or reversal on appeal of any order of the Court, reducing the amount of any attorneys' fees or costs to be paid to Class Counsel, or reducing the amount of any service payment, shall constitute grounds for cancellation or termination of this Agreement or grounds for limiting any other provision of the Final Judgment. Class Counsel further retains and reserves all rights to appeal or seek reconsideration of any order of the Court reducing the amount of attorneys' fees or costs to be paid to Class Counsel and/or any order of the Court reducing the amount of any service payment. Defendant shall not oppose the appeal or motion for reconsideration other than in accordance with Section 8.5.

(J) If this Agreement is terminated after Notice is sent, or if for any other reason

the Effective Date does not occur after Notice is sent, Defendant shall provide notice (approved by Class Counsel) to all Class Members informing them that the settlement did not become effective, that as a result, no payments will be made to Participating Claimants under this Agreement, and that the Litigation will continue, along with any additional information jointly agreed to by Class Counsel and Defendant. Such notice shall be mailed by the Defendant via United States First Class Mail, postage prepaid, and by email, to the addresses to which Notice was sent and/or any Updated Address. The costs of such mailing shall be split equally between the Parties.

(K) If the classes have already been certified for settlement purposes, the classes that were certified as part of this Agreement shall be decertified and the Parties shall jointly move as soon as practicable to obtain an order granting decertification, and the fact of certification shall not be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural.

(L) In the event that Defendant terminates this Agreement pursuant to Section 7.1, Defendant shall incur the costs of mailing notice as set forth in Section 7.2(J).

Notwithstanding the foregoing, to the extent the Court disapproves of any of the terms of this Agreement, or any of the exhibits that are part of this Agreement, the Parties agree to meet and confer in good faith regarding modifications to any such terms and/or exhibits and to submit any agreed modification to the Court to seek approval.

## 8.    CONSIDERATION

8.1    **Settlement Amount**.

(A) In settlement of all claims addressed by this Agreement, Defendant agrees to pay into the QSF the Gross Settlement Amount within ten (10) days after the Preliminary Approval Order, which includes all payments to Participating Claimants, Class Counsel's Court-approved attorneys' fees, costs, and expenses related to the Litigation, including all attorneys' fees, costs, and expenses related to the effort to secure Final Judgment (including litigation of any potential objections to the terms of this Agreement); and any Court-approved service payments. Under no circumstance shall Defendant be required to pay or contribute any monies in excess of the Gross Settlement Amount, except as

required to fund Employer Portion Payroll Taxes pursuant to Section 8.6(B)(1) below.

(B) The Gross Settlement Amount of $261,458.84 reflects the following: (1) alleged tips owed to the Rule 23 Class in the amount of $78,229.42; (2) liquidated damages in the amount of $78,229.42; and (3) $105,000 for statutory damages for alleged wage notice violations.

(C) Within thirty-five (35) Days after the Effective Date, Defendant shall mail the Settlement Checks. Participating Claimants will have one hundred eighty (180) Days from the date of mailing to cash their Settlement Checks ("Check Cashing Period"). Defendant shall notify Class Counsel in writing of the date the Settlement Checks will be sent at least two (2) business days before transmission. Settlement Checks not cashed within one hundred eighty (180) Days will be void. The amounts in the QSF attributable to the void and uncashed Settlement Checks shall revert to Defendant. Participating Claimants who do not redeem their settlement checks shall remain bound by the Final Judgment, and shall have released the Released State Law Claims and Released Federal Law Claims as provided in this Agreement. The provisions of any unclaimed property statute or law do not apply to this Agreement.

8.2    **Settlement Payments**

(A) The "Settlement Payments" for Named Plaintiff and all Class Members as follows:

(1) The "Net Settlement Amount" shall be the monies to be distributed to the Class Members after attorneys' fees, costs, and service award.

(2) The Defendant shall determine an "Individual Numerator" for each Class Member using data provided by Defendant consisting of time records for each Class Member, and shall be based on the amount of hours worked by each Class Member.

(3) The "Total Denominator" shall be determined by adding together each Class Member's Individual Numerator.

(4) The "Distribution Percentage" for each Class Member shall be determined by

dividing each such person's Individual Numerator by the Total Denominator.

(5) The Settlement Payment for each Class Member shall be determined by multiplying each such person's Distribution Percentage by the Net Settlement Amount.

(B) For purposes of determining the eligibility of individuals to participate in this settlement, and for purposes of calculating Settlement Payments pursuant to this section, Defendant's records are conclusively presumed to be correct. The Parties agree to cooperate in good faith to resolve any disputes that arise with respect to eligibility and for purposes of calculating Settlement Payments.

8.3    **Settlement Checks to Class Members**

(A) Each Class Member shall be issued a Settlement Check by Defendant from the QSF in accordance with this Agreement and the Final Approval Order.

(B) The Settlement Checks shall be mailed to Class Members by the Defendant within thirty-five (35) Days after the Effective Date. The Settlement Check mailing shall include a notice to Class Members that their checks shall be void if not cashed within one hundred eighty (180) Days of the mailing.

(C) Defendant, to the extent it possesses and can readily access such information, shall compile information as is necessary and reasonably available to make proper tax withholdings and comply with tax reporting obligations as described in Section 8.6.

8.4    **Service Payments.**

(A) At the Fairness Hearing, and in recognition of services rendered to the Class Members, Class Counsel shall move the Court for an award of the following service payment from the QSF: $5,000 to Equan Brown. Defendant shall not oppose this application.

(B) The application for service payments is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for the service payments will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. The amount of service payments sought but not awarded shall remain

part of the Gross Settlement Amount to be distributed to Participating Claimants.

(D) Any service payment approved by the Court shall be paid from the Gross Settlement Amount.

(E) The Defendant shall mail the Court-approved service payments for Named Plaintiff within thirty-five (35) Days of the Effective Date.

8.5     **Attorneys' Fees and Costs.**

(A) At the Fairness Hearing, Class Counsel shall petition (and Defendants shall not oppose) the Court for an award of attorneys' fees and costs to be paid from the Gross Settlement Amount in the QSF. Any Court-approved attorneys' fees and costs shall be paid from the Gross Settlement Amount in the QSF.

(B) The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. Should Class Counsel's application be denied on the basis that the remaining settlement amount would be inadequate compensation to the Class Members, the Parties shall renegotiate the Gross Settlement Amount to an amount that is approved by the Court, or this Agreement shall terminate consistent with Section 7 of this Agreement.

(C) Within thirty-five (35) Days of the Effective Date, the Defendant shall wire or mail the Court-approved attorneys' fees to Class Counsel.

8.6     **Tax Characterization**.

(A) In connection with Defendant's transfer of funds into a QSF within the meaning of Treasury Regulation § 1.468B-1, et seq., the following definitions shall apply:

(1) Defendant shall be a "transferor" within the meaning of Treasury Regulation § 1.468B-1(d)(1) to the QSF(s) with respect to the amounts transferred;

(2) Defendant shall be the "administrator" of the QSF within the meaning of Treasury Regulation § 1.468B-2(k)(3), responsible for causing the filing of all tax

returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Treasury Regulation § 1.468B-2(1)(2) or any other applicable law on or with respect to the QSF, and in accordance with this Agreement; and

(3) The Defendant shall reasonably cooperate in providing any statements or making any elections or filings necessary or required by applicable law for satisfying the requirements for qualification as a QSF, including the relation-back election within the meaning of Treasury Regulation § 1.468B-1(j).

(B) For tax purposes, with respect to the payments to Participating Claimants, including the payment to Named Plaintiff (the "Settlement Payments"):

(1) Defendant, as the administrator of the QSF making such payments, shall report 50% of the respective Settlement Payments made to the respective payees to the United States Internal Revenue Service and to other appropriate taxing authorities ("Taxing Authority" or "Taxing Authorities") on an IRS Form W-2. This portion of the Settlement Payments (the "Wage Portion") shall be subject to applicable employment taxes and withholding taxes, as determined by previously provided payroll information on record of Defendant for each Participating Claimaint. The Settlement Claims Administrator shall provide to Defendant a calculation (in reasonable detail) of the Employer Portion Payroll Taxes due with respect to the Wage Portions of the Settlement Payments no later than fifteen (15) Days prior to the date such Employer Portion Payroll Taxes are due to be remitted to the applicable Taxing Authorities under applicable law. No later than 5 Days prior to such date, the Settlement Claims Administrator shall revise such calculation to take into account any reasonable comments to such calculation timely delivered by the Defendant. The Defendant shall pay an amount equal to the Employer Portion Payroll Taxes determined pursuant to this Section 8.6(B)(1) into the QSF no later than two (2) Days prior to such due date for remittance by the Settlement Claims Administrator to the applicable Taxing Authorities.

(2) The other half of the respective Settlement Payments is compensation for alleged liquidated damages and interest, and Defendant, as the administrator of the QSF making such payments, shall report such amounts as such to the respective payees and to the Taxing Authorities on an IRS Form 1099. This portion of the settlement (the "Non-Wage Portion") shall not be subject to backup

withholding or other applicable tax withholding unless required by law, as determined by the Defendant as administrator of the QSF making such payments.

(3) In the event that it is subsequently determined by any Taxing Authority that any payee owes any additional taxes with respect to any money distributed under this Agreement, it is expressly agreed that liability for such taxes rests exclusively with that payee and that Defendant will not be responsible for the payment of such taxes.

(C) The Defendant, as the administrator of the QSF making such payments, shall report to the respective payees and to the Taxing Authorities on an IRS Form 1099 any service payments made pursuant to Section 8.4, and such payments will not be subject to backup or other tax withholding unless required by law.

(D) Defendant, as the administrator of the QSF making such payments, shall report to Bouklas Gaylord LLP and to the Taxing Authorities on an IRS Form 1099, under Bouklas Gaylord LLP's federal taxpayer identification numbers, the fees and costs paid to Class Counsel pursuant to Section 8.5, and such payments will not be subject to backup or other tax withholding unless required by law, and provided that Bouklas Gaylord LLP has provided a validly completed current IRS Form W-9 to Defendant.

(E) Defendant shall have no liability or responsibility whatsoever for taxes of the QSFs, any Class Member, Class Counsel, or any other person or the filing of any tax returns, information reports or other documents with the Internal Revenue Service or any other taxing authority with respect thereto. Recipients of any payments made pursuant to this Agreement will be solely responsible for all taxes, interest and penalties owed by such recipients with respect thereto, and will indemnify, defend, and hold Defendant harmless from and against any and all taxes and interest as a result of such recipient's failure to timely pay such taxes.

(F) Named Plaintiff, on behalf of Class Members, acknowledges and agrees that Defendant has provided no advice as to the taxability of the payments received pursuant to this Agreement.

9.    **RELEASE OF CLAIMS**

By operation of the entry of the Final Approval Order, and except as to such rights or claims as may be created by this Agreement:

9.1     **Rule 23 Class Members**. Each Rule 23 Class Member who does not timely and properly submit an Opt-Out Statement pursuant to this Agreement, on behalf of himself/herself, his/her heirs, representatives, successors, assigns and attorneys fully, finally and forever releases, and dismisses with prejudice, relinquishes and discharges the Released State Law Claims and Federal Law Claims.

9.2     **Named Plaintiff**. Named Plaintiff forever and fully releases Defendant and the Releasees from the following:

(A) The Released Federal Law Claims;

(B) The Released State Law Claims (applicable to the state(s) in which he or she was an unpaid Intern); and

(C) Any and all past and present matters, claims, demands, and causes of action of any kind, whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which Named Plaintiff have or might have, known or unknown, of any kind whatsoever, asserted or unasserted, that are based upon or arise out of any facts, acts, transactions, occurrences, events or omissions occurring prior to their respective dates of execution of this Agreement. This release includes, without limitation, claims asserted in the Litigation and any other claims based on state or federal law governing minimum wage, overtime pay, failure to pay wages, denial of meal periods and rest breaks, failure to pay wages upon termination, failure to provide itemized wage statements, retaliation due to the filing of or participation in the Litigation, unfair competition, failure to make payments due, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, failure to post a summary and/or notice of wage-hour laws, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), the Employee Retirement Income Security Act ("ERISA"), the New York Minimum Wage Act, New York Labor Law §§ 650 et seq., New York Wage Payment Act, New York Labor Law § 190 et seq., the New York State Department of Labor Regulations, 12 N.Y.C.R.R. part 142, and the statutes, regulations, and common

laws of all other states relating to the foregoing.

Named Plaintiff agrees not to knowingly seek employment or rehire with Defendant. Violation of this provision will be sufficient grounds to deny or terminate employment with Defendant or any of its affiliates, related entities, or successors.

## 10.    INTERPRETATION AND ENFORCEMENT

10.1   **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable efforts to obtain the Court's approval of this Agreement. The Parties shall work together, diligently and in good faith, to facilitate the expeditious entry of a Preliminary Approval Order, Final Approval Order, and Final Judgment. Each party, upon the written request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

10.2   **Non-Interference With Settlement.** Pending the Court's decision on final approval of the settlement and entry of the Final Approval Order, Named Plaintiff and anyone acting on his behalf are barred and enjoined from: (a) further litigation in this Litigation; (b) filing, or taking any action, directly or indirectly, to commence, prosecute, pursue or participate, individually or on a class or collective action basis, any action, claim or proceeding against Defendant in which any of the claims released by this Agreement are asserted, or which in any way would prevent any such claims from being extinguished; or (c) seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

10.3   **No Assignment**. Class Counsel and Named Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

10.4   **Entire Agreement**. This Agreement contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties (including the parties' settlement

Memorandum of Understanding) shall be deemed merged into this Agreement.

10.5 **Binding Effect**. This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiff, his representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

10.6 **Arms' Length Transaction; Materiality of Terms**. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

10.7 **Captions**. The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

10.8 **Construction**. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

10.9 **Governing Law**. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York.

10.10 **Continuing Jurisdiction**. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement.

10.11 **Waivers, etc. to Be in Writing**. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this

Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

10.12   **CAFA**. Defendant shall provide copies to Class Counsel of notice(s) where required by the Class Action Fairness Act ("CAFA").

10.13   **Counterparts**. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

10.14   **Facsimile and Scanned Signatures**. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**IN WITNESS WHEREOF**, this Agreement is executed as of the date indicated below.

_____
Equan Brown, Plaintiff

State of New York
County of _____

The foregoing instrument was signed/acknowledged by Equan Brown before me this _____ day of _____, 2019 by the above parties.

_____
Notary Public

_____

DR SMOOD 1151 BROADWAY LLC, Defendant

by _____

State of New York

County of _____

The foregoing instrument was signed/acknowledged by Equan Brown before me this _____ day of _____, 2019 by the above parties.

_____

Notary Public

_____

DR SMOOD 285 MADISON LLC, Defendant

by _____

State of New York

County of _____

The foregoing instrument was signed/acknowledged by Equan Brown before me this _____ day of _____, 2019 by the above parties.

_____

Notary Public

_____

DR SMOOD 485 LEX LLC, Defendant

by _____

State of New York

County of _____

The foregoing instrument was signed/acknowledged by Equan Brown before me this _____ day of _____, 2019 by the above parties.

_____

Notary Public

_____
DR SMOOD SOHO LLC, Defendant
by _____

State of New York
County of _____

The foregoing instrument was signed/acknowledged by Equan Brown before me this
_____ day of _____, 2019 by the above parties.


_____
Notary Public

_____

_____
DR SMOOD ORCHARD LLC, Defendant
by _____

State of New York
County of _____

The foregoing instrument was signed/acknowledged by Equan Brown before me this
_____ day of _____, 2019 by the above parties.


_____
Notary Public

_____

_____
DR SMOOD NEW YORK PRODUCTION LLC, Defendant
by _____

State of New York
County of _____

The foregoing instrument was signed/acknowledged by Equan Brown before me this
_____ day of _____, 2019 by the above parties.


_____
Notary Public

_____
Rene Sindlev, Defendant

State of New York
County of _____

The foregoing instrument was signed/acknowledged by Equan Brown before me this
_____ day of _____, 2019 by the above parties.

_____
Notary Public

_____
Patrizia Manici Sindlev, Defendant

State of New York
County of _____

The foregoing instrument was signed/acknowledged by Equan Brown before me this
_____ day of _____, 2019 by the above parties.

_____
Notary Public